We will hear argument next in Case 17-765, United States v. Stitt, and Case No. 17-766, United States v. Sims. Ms. Ross. Mr. Chief Justice, and may it please the Court. The crime of burglary has always focused on dwellings. By the time Congress adopted the current version of the Armed Career Criminal Act in 1986, the vast majority of States had burglary statutes protecting all types of homes, including the nonpermanent and mobile dwellings at issue in these cases. In the words of Taylor v. United States, that was the generic sense in which the term burglary was then used in the criminal codes of most States. That wasn't the position that the government took prior to Mathis, was it? I thought that prior to Mathis, the government acknowledged that generic burglary did not include motor vehicles as habitations. I don't think that's quite right, Your Honor. Before Mathis, this issue didn't come up as often, because obviously the government often had two arguments it could make. It would make a divisibility argument as well as a mobile dwellings argument. But the government did in many of the court of appeals cases going back to the 90s and the early 2000s actually make this argument. Again, it's become more important following Mathis, because now the divisibility analysis is harder, and so in more cases the outcome is actually turning on whether burglary is capacious enough to include the very types of burglaries that, as we note in the brief, at least 44 States would have counted in 1986. Sotomayor, I have little problem understanding your argument with respect to mobile homes or floating homes. Those are structures that don't have any self-propulsion mechanisms. If I drive by a mobile home, it's a home on land. I don't think of it as a vehicle in any meaningful way. A floating home is essentially the same. It just floats, but to move it, you need a vehicle  to move it. But RVs, campers, tents, these temporary things, how is someone supposed to know that people are using them to sleep in at a particular moment? Well, Your Honor, to answer sort of your question directly and then to take a step back, I think people often will know that those are being used because those are in fact designed or adapted for that purpose, and so you sort of know that an RV generally has them. Just a car. There are plenty of homeless people I know in both New York and Washington because I've seen them sleep in their cars, but if I'm a thief and I see a blanket or a pillow in the back of the car, I have no idea. There's no notice that it's being used to sleep in because, or to sleep in overnight. You know, parents who take a kid on a trip will throw a pillow and a blanket in the back. I've thrown one in the back if someone else is driving during the day. So what are we supposed to do about the used part of this? Adapted, I understand. You might be able to see that. But how would you, if you're a thief, know that a car is being used for someone to sleep in overnight? So, Your Honor, I think there are a number of points sort of in that question. I want to try to get to all of them. I actually don't think that the vehicle that's simply being used on the trip taking the kid to college is at all at issue in this case. That's not a sort of ordinary interpretation of either of the statutes that we have before us. The Sims statute that comes closest to making this argument, the Arkansas statute, applies either to a vehicle that is customarily used for overnight accommodation or one in which a person lives. So somebody sleeping overnight would not fall in there. I also think... So where any person lives, the homeless person who lives in a car. Right, Your Honor. And we don't think that even that interpretation is in front of this court because that was not raised previously in the brief in opposition and it also... So define used for me. How is... and define it in a way that a thief is going to know or a burglar is going to know that it's being used as a home. So, Your Honor, I don't think Congress was focusing specifically on whether a burglar would know ahead of time. What Congress was doing was looking at how the States defined burglary and that is essentially the central intuition of this Court's decision in Taylor is that Congress did not itself provide a functional definition of burglary. What it did was it looked at how the States defined burglary. And the States, by and large, included vehicles used and adapted for overnight accommodation. Now, the specific provision that's at issue in the Sims statute, again, if you think it's properly before the Court, it requires an interpretation of the State law. That's something that this Court would ordinarily defer to the Regional Court of Appeals on and the Regional Court of Appeals didn't consider that here. But I think it's significant that what the statute says is lives and that is someplace in which someone, even in ordinary usage, makes a home. And so I don't think that will necessarily be an ordinary, structurally not at all adapted or changed vehicle. Sotomayor, you've gone around my question. Would someone who breaks into a car that a homeless person is using as their home, are they encompassed by your definition or by these statutes? So, Your Honor, I think they are not encompassed by these statutes and I think that our definition turns on whether most States would, in fact, have included that person. So I don't think that it's encompassed by this statute because, again, I think even the homeless person that you're hypothesizing would change their vehicle in some way that might put a burglar on notice. But even if you disagree with me on that, no State case, as Respondent Sims readily admits in the brief, no State case has applied it to a vehicle in which someone happens to live. And that's not just true of Arkansas. Between the Respondent's brief and our reply brief, we've come up with about 12 States that have language that's similar to that, and in none of those States can the government find a case in which these types of statutes were applied to a place where someone lives. And so I think you're right. Roberts, I'm not sure how that helps you, because you've identified, first of all, that only 12 States are at issue, which seems to me a strike against the government here, as to suggest that this was what Congress had in mind in 1984-86. Second, the statute, at least in Arkansas, is disjunctive, right?  It doesn't sign up with the Tennessee statute and suggest some sort of customization or change, but then it uses lives in, and that doesn't connote any changes to the vehicle itself at all. That could be sleeping in the back of a car, nothing more. And I wonder, under your interpretation about this hypothetical, let's say someone breaks into such a car where someone's living, a homeless person, or someone crossing the country. To steal a flip phone, that would be burglary, I think you'd say, and the ACCA would kick in, and 15 years might follow as a sentence. Compared to the person who tows away the same car without entering it and commits a theft, that would just be a common-law theft with no attendant problem, even though maybe an arguably greater harm has occurred. What do you think about that? Well, Justice Gorsuch, to sort of answer your questions in reverse order, perhaps, I think that's actually not particularly anomalous, because what the burglar has done in the first case but hasn't done in the second case is opened up exactly the risk of a violent confrontation with which Congress was concerned in enacting a statute, but specifically both in 1984 and 1980. Well, if the car is empty and no one's around, it's quite unlike a home. You don't know what you're going to enter, what you're going to find when you enter a car. You can look in and see. So there's no risk of violent encounter in either, in my hypothetical. So I've modified my hypothetical for you there. Now what? You have, Your Honor, but I think at the same time what Congress was doing, again, was not creating its own definition of burglary. It was trying to use the work that the States had already done, and that makes significant sense, given that it was enacting a recidivism statute and therefore would want to cast its net broadly. And this, I think, takes me to Your Honor's first question, which is that, actually, the numbers work in exactly the opposite way, as you suggest. On Respondent's view, there would only be, in 1986, and the numbers are similar today, about 12 States in the entire country that would have any burglary offense whatsoever that qualified under the Armed Career Criminal Act. By contrast, on our view, there would only be about 12 States in the entire country that would have any burglary offense whatsoever that qualified under the Armed Career Criminal Act. It seems to me an exceedingly small number you've cited to us. No, Your Honor, I don't think it's exceedingly small, and this, I think, will get me back to your second question, if the Court will bear with me. So I think there are about 12 statutes that had lived in or some kind of similar language, but that's a subset of over 44 statutes that would have reached vehicles generally in which people lived that were adapted for overnight accommodation, that were customarily used for overnight accommodation. And so I think what you see is that the States all sort of coalesced around this notion of what is a modern-day dwelling, and that makes particular sense, because as I began my presentation this morning, common law or, excuse me, burglary has always focused on dwellings. And so it is hardly surprising that a large number of States would have, over time, noticed and taken heed of the fact that people live in many different places and that burglary statutes, therefore, should protect all of those places. And so I think what Congress, again, was doing was seeing where the States drew those I mean, Taylor said on no fewer than four occasions that burglary was, in fact, meant in the Armed Career Criminal Act to capture the common sense in which the States were using the term. Ginsburg. When you are using any car, that is, any car is capable of being lived in, so the burglary statute that you are envisioning, a statute that took in anything capable of being lived in would include any car. No, Justice Ginsburg, I don't necessarily agree with that. I think that the Arkansas statute does not actually cover that type of any car that is lived in for the reasons I was giving earlier. One, I think the dictionary definition of lived would be to occupy as a home, and so we ordinarily would see some type of change to the structure. Two, there is no State case, whether in Arkansas or in any other jurisdiction that has similar language, actually applying the statute to the home in which someone lives without any modification, or really to a vehicle at all. And three, I think if you look at the two parts of the statute, as I believe Justice Gorsuch was noting earlier, one prong says customarily used, and we think that that's something that is commonly used perhaps because it's designed for overnight accommodation, and the other is someplace where someone lives, and we think that that brings in sort of the adapted in this particular case. And so when you put those two prongs together, you actually get to a place that is quite similar to the Tennessee statute. And I think that perhaps is why this is the case. Breyer, it sure sounds to me like you've turned those two prongs into one, made them superfluous. I don't think so, Your Honor, because something that is customarily used would be everyone knows that you can live in that, so it's a mobile home, it's something of that nature, whereas the lived in is just sort of saying if you actually live in your car, or not your car, because no cases, again, actually cover your car, but if you actually live in another type of structure, we're going to assume that you've adapted it in some way. Sotomayor, I'm sorry. What is it assume, and then what's the meaning of adapted? Is it a structural change of some sort, or is it throwing a pillow and blanket? Is it putting a mattress in there? What's adapted mean? So, again, Your Honor, I would say that's customary to understand. Sotomayor, I would say that's customary to understand that adaptation. So I think the States have grappled with what is adapted for overnight accommodation under their statutes, and by and large, this comes up in cases involving campers, hotels, houses under renovation, and the answers are not surprising. Respondent Stitt cites three cases for the suggestion that maybe it's difficult to decide whether something is adapted for overnight accommodation, and all three of those involve just the type of structure. But we can't just leave it in State hands. We're providing a Federal definition. So what's the Federal definition that we give? You are providing a Federal definition, Your Honor, but, again, I don't think that when Congress did this, it was trying to itself determine these edge cases. I think instead it was looking to the content. Well, we said dwelling in structure, so now not building in structure, pardon me, now we have to define structure. Yes, Your Honor. Or give some understanding of what the Federal meaning of it was. In our cases, we very clearly excluded vehicles. We said that. And so now you want us to put a gloss on that, and I want to know how and what guidance we give on that gloss. Yes, Your Honor. So does it have to be something permanent to be adapted? So I don't think that there is a clear answer to that question, unfortunately. I think the general answer is yes. Well, the problem really is that if it's criminal law, so shouldn't we be clear? Well, we should be. We should give notice to people of what the consequences of their actions are, and so don't we have an obligation to be as clear as we can be? Yes, Your Honor. I think specifically of the examples that you mentioned, the bed and the structural change, those are clearly adaptations that would count. But even the bed. Just the bed, including a mattress? Yes, Your Honor. I mean, I think the people who are carrying the mattress from the store to their home, I see that all the time. Well, no, Your Honor, because that wouldn't be installed in a way that was actually adapted for overnight accommodation. You would just be transporting your mattress in that case. I don't think you've installed your groceries when you bring them home or things of that nature or adapted for that. Does it matter if it's a sometimes, sometimes I sleep in my car, and sometimes I sleep in a home? Does it have to be the regular residence? Does the car, to qualify, have to be what you sleep in all the time? Or could it be that you have a principal residence someplace else, but many times you sleep in your car? Well, Justice Ginsburg, just to back up again, I think that the vehicle in which you happen to sleep on occasion wouldn't fall in even under the broadest possible interpretation of the Arkansas statute at issue in Sims, because you wouldn't live in your car in that instance. You wouldn't occupy it as a home. I'd like to ask you a general question, if you would answer it. You've read probably Justice Alito's opinion about the woman who was trying to go to Brussels, and she ended up in Serbia. All right. Now, you've used the words — I mean, I think there's a point there. You've used words like common sense. You just heard Justice Sotomayor use somewhat similar words. Generic burglary. That's the word. Generic burglary. I mean, Congress wrote 10 words in this statute. It thought it had a simple task. All we have to do is look to state law, and then we'll see whether it's a violent crime or not. But Congress forgot that there are thousands of state laws with variations all over the place. So what this reminds me of what we're doing, Swift v. Tyson, the brooding omnipresence of the law. We look up in the sky to decide what is generic burglary. So what, in your opinion, do we do? Now, Judge Posner said, and I agreed with this, what you should do or the Sentencing Commission should find out how these cases are actually prosecuted, which you haven't, nor has the Sentencing Commission. A second possibility was to say, we'll go back and see if there was violence in this individual case, which is almost impossible because all you see is a rap sheet or something, you know. But over time, maybe. And a third possibility is that the Department of Justice asked Congress to rewrite the statute, which is exactly what Ms. Vrind said. All right. Have you thought about this over the Department? Well, you have to prepare these cases. Have you thought about it? And if you have a better approach than I've just outlined, I'm my ears are open. Well, Your Honor, I certainly understand all of those concerns, and I don't think anyone standing here from the Department of Justice would suggest that this is always an easy determination under the categorical approach. I do think in this case it is not particularly difficult, and that is because, as I started out, burglary has always concerned dwellings. So whatever the edge case is, whatever the difficult case is under the categorical approach, it's very clear that when this Court noted in Taylor that Congress had eschewed the common law and gone beyond the common law, that it should have at least captured the types of dwellings that we're talking about today, because, again, 44 states captured them. When the last time was that I thoroughly looked into State criminal law, it was my first year of law school, and I'm not sure how much I looked into it even then. Understood, Your Honor. We have looked at it more recently. And, again, I mean, the best I can give you is that 44 states would have covered this in 1986. By contrast, on Respondent's view, you would have 12 states that have a generic burglary statute today. And as Justice Gorsuch noted, perhaps my friend will quibble with that. But I don't know. Well, I'd like you to return to Justice Breyer's original question. I know you want to run straight to this case, and I appreciate that. But live with us for a moment in the unease of the more general concern that Justice Breyer raised. If you survey circuit judges across the country about one gripe they have with this Court's jurisprudence, it may be the ACCA. You'd hear a lot. And maybe the fourth option I sometimes hear is, why not do an ERIE instead of Swift v. Tyson and say, well, if the state calls it robbery, if the state calls it burglary, then it's robbery or burglary. And I'd be curious, and I'm not holding any of it, but has the Department given any thought to any of these options that Justice Breyer's outlined or that I've just added? May I add a fifth? Please. Because I know there actually is a statute in Congress right now that replaces ACCA with a statute that looks to the penalties that have been given. So I guess my question is, has the Department taken a position on that statute that is pending in Congress currently? Your Honor, I apologize. I'm actually not aware of whether the Department has taken an official position on that. I know that the Attorney General issued some sort of general remarks praising that effort, but I don't know if that's gone to the level of a real sort of Department position. I do think that we have thought about sort of the other ideas that Justice Breyer and Justice Gorsuch suggest, and among those, I know, Justice Gorsuch, I believe you added anything that the State calls burglary will call burglary. I know that this Court at least rejected that in Taylor because, you know, you would have some sort of unfortunate consequences. For example, Michigan has always entitled its burglary statutes as breaking and entering, and they very clearly are burglary, but that just happens to be the nomenclature that Michigan used. And what this Court said in Taylor and what Congress said was that it really didn't want sort of offenders who exhibited these qualities, had had these dangerous convictions previously to escape on a technicality. Alito, would you worry? Alito, I mean, you're not exactly on a winning streak here in ACCA cases. You might have gotten the hint that a majority of the Court really hates ACCA, and it's picking it apart bit by bit by bit, and at least with respect to the enumerated offenses like burglary. Why not depart from this categorical approach and look at what actually happened in the particular case to the extent that you can determine it? If you can't determine that it falls within generic burglary, fine, but in a lot of cases you're going to be able to figure that out very quickly. Otherwise, you're going to be at the mercy of these marginal hypothetical cases that the members of the Court and their law clerks can think of. So the car that is, you know, has a mattress in the back and, you know, things like that. Why not look at what actually happened in the real world as opposed to these hypotheticals? Ginsburg. Didn't this Court say you couldn't do that? Alito. Yeah, the Court said that, but the Court isn't always right. Sometimes when we make a mess, which we have done in this, in my humble opinion, in this area, we have made one royal mess. Maybe we ought to go back and correct our own mess. Your Honor, again, I think perhaps in some case that would be something that this Court needed to think about. I really apologize for continuing to bring us back to this case, but we haven't asked that the Court reconsider Taylor in this case, and that's because we really don't think that we need that in order to prevail here. Taylor, obviously, is where the Court first really embraced the categorical approach with respect to burglary, and in this case it is quite clear. Again, this was really the way in which these States defined burglary by 1984 and 1986, and in Taylor, this Court made clear that it was helping or illuminating what Congress had done by looking to those same State burglary statutes. And Respondent's suggestion in this case is essentially that this Court take the words that Taylor drew from the State statutes, and this Court construed those words significantly more narrowly than the courts of those States actually did, and the statutes of those States actually did, and in the process eliminate more than 20 State burglary statutes from the books, essentially, for ACCA purposes, precisely because those State statutes would cover all types of dwellings. And whatever the edge case is, whatever the hard case is under the Armed Career and Criminal Act, we just don't think that that is this case, given what had been on the books in the States at that time. Now, I know there's been some discussion this morning about how offenders would have notice of what is in and what is out, but I think we can point you to the same thing, which is that this was the commonly understood understanding of burglary in 1984 and 1986, and so I don't think that it's too much to assume that if you were convicted of burglary under a typical burglary statute, that that will influence the fact be what Congress and what this Court considers burglary for purposes of the Armed Career and Criminal Act. Ginsburg's Suppose we think about the consequences, the number of years that are added to a person's life by ACCA. Another approach the Court could take is to say, because this is such a harsh statute and has such extreme consequences for the individual, we are going to have a clear statement rule for Congress. If you want to have this kind of heavy penalties, you have to be clear, and if it's ambiguous, we will not uphold the application of ACCA, starting out with the premise that when the consequences are so severe, Congress has an obligation to be plain. Your Honor, I think Congress was very plain in this statute. I think if you took someone in 1984 or 1986 and said burglary, you would think, hmm, burglary isn't generally a Federal law or isn't generally a Federal crime. I'll look to how the States define burglary. And this was how, in fact, the States defined burglary. Again, 44 States would include this type of conduct. At least 31 included in a way that's narrow enough that they would have an ACCA burglary statute. On our view, if you take my friend's position, that number dwindles down to 12. And I don't think that, keeping in mind that Congress enacted a very significant penalty for these offenses, I don't think Congress would have expected its work to do so little. And importantly, it's not as though those 12 would actually be the most severe or the most aggravated burglary offenses in those States. It's entirely based on this question of whether they did or they didn't think about all types of places, whether elaborate or modest, where people live. So you wouldn't even necessarily be getting the aggravated burglary statutes in that instance. In fact, if you look at the Tennessee case that we have before us, Stitt, that is an aggravated burglary conviction because it's burglary of a habitation, because the Court or the State very soundly made the determination that when one burgles a habitation, that is a more dangerous and a more serious offense. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Fisher. Fisher. Mr. Chief Justice, and may it please the Court. We ask the Court to affirm the judgments below for three reasons. First, this Court's precedent from Taylor on through to Mathis make clear that when it comes to the burglary provision of ACCA, buildings and structures are in one category that are inside the statute. Vehicles are in another category that are outside the statute. And this case involves quintessential vehicles. Secondly, the use prong of the government's definition that it offers to this Court is an independent reason why Arkansas's law goes beyond any generic definition of burglary that would be acceptable. And third, if necessary, we would ask this Court to apply the Sixth Amendment rule that Justice Thomas announced in Apprendi and himself laid out in Mathis and Shepard, that ACCA itself violates the Sixth Amendment because it transgresses the jury trial right. Kagan. May I start you on your first point, Mr. Fisher? So the Court has indeed said many times that vehicles fall outside the generic definition of burglary. But I think that when the Court said that, what it really meant was this is a way to say if the statute covers basic car theft, it's outside ACCA. That's not the typical burglary offense. And the Court was not thinking about mobile homes or RVs. It just didn't have that in its head when it made those statements. So those statements really don't have much to do with the question in this case. Fisher. I think the closest the Court did come to actually dealing with that question was in Mathis. Remember, the Iowa statute there didn't simply cover all vehicles. It covered vehicles that were adapted for overnight accommodation or use in a couple of other ways. And the government in its brief said the mere fact that the statute covers vehicles is enough to put it outside of ACCA. And the Court said the same thing four times in its opinion. And I'd hasten to add, and I think this goes back to Justice Ginsburg's question in the first part of the argument about the government's position in Mathis. The government on page 42 in Mathis said if you adopt the divisibility rule being urged by the other side, you're going to leave many State statutes outside of burglary. And in footnote 12, the government cited many State statutes that it now is back here claiming actually do fall within burglary, even though the government's representation to this Court in Mathis is that they would fall outside. So I understand. Kagan. I don't think Mathis really is at odds with what I was saying. Everybody in that case agreed that this covered vehicles, broadly speaking. And the government conceded it. The other party conceded it. All of the opinions viewed it that way. And so nobody really ever addressed the question of are there different kinds of vehicles in the world? Are there cars and are there mobile homes? Fisherman. So I understand, Justice Kagan, you haven't had this precise type of object in front of you. But I think the Court's opinions are still illuminating, because the Court does say there's vehicles on the one hand and structures and buildings on the other. And so the project here is which category do things like sleeper vans or a sailboat tied up at harbor that has a sleeping quarters underneath fit into? And so just as the Court has held in the Fourth Amendment context of California v. Kearney, just as the HUD regulations that we cite at page 11 of our brief lay out, just as the State law like Tennessee lays out, just like local law, like local zoning law we cite on the same page of our brief, they all distinguish between floating homes and mobile homes, which are designed to be stationary on the one hand and put those in the structure category or a dwelling or a residence category. On the other hand, there are things like recreational vehicles, sleeper vans, and boats that have sleeping quarters that have always been in the vehicle category. And the reason why is because the principal purpose of those objects is transportation. They can be used, incidentally, for overnight accommodation, and they are occasionally used. But I want to stress to the Court it's only occasional. And I know I heard some displeasure with the categorical approach in the first part of the case, and I'm happy to engage in that. But just to take the law as it stands and as the government is not asking you to change it, the hypothetical the government has to answer for is the vacant sleeper van or boat tied up at harbor that is used only a few days a year and shows no outward signs of current habitation. That's the hypothetical that both Tennessee and Arkansas sweep in. I'll turn later to the specific provision of Arkansas law, the lives-in provision, which is even broader. But that's the hypothetical the government has to answer for. Alito, Justice Kagan. Alito, Justice Kagan. There are a lot of vacation homes that are occupied for only a short period of time, and somebody contemplating a burglary can look at them and determine pretty easily that place is not occupied at the present time. But what about so you have a house, and then next to it you have a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons, and is actually occupied at the time of the initial entry by the defendant? Is there any reason why the burglary of the house should be treated differently from burglary of this vehicle? Isn't the risk exactly the same? Well, Justice Alito, I'm going to answer that question, but just allow me to preface this. I don't have to win that hypothetical, because the hypothetical the government has to win is the person not being in and not being near a house. But to answer your question directly, I would still say that's the Arkansas statute. What I read you is exactly what the Arkansas statute says. I'm sorry, the Tennessee statute. The Tennessee statute does not require it. It does require the person to be there, yes, Justice Alito, but it doesn't require it to be sitting right by a house. So it could be no, I'm just saying, but this is the contrast. Why would why is one you would concede burglary and the other and the other is not? I don't see any possible reason why the law should treat those two situations differently. I think because the criminal law, we've heard a lot about notice this morning, and a core concept of criminal law is providing fair notice. And so for the same reason that a vacation home is inside burglary, because it is a home, it is a dwelling, and so you would expect it to be occupied as a residence, even if it happens to be somebody's second home, that is in. The same objective characteristics of a vehicle, even a recreational vehicle adapted for occasional overnight accommodation, fall outside. And so the criminal law has to draw lines. You can't simply do it in that fine grain of a basis. And the government's argument, Justice Alito, I would add, does not depend on the person being inside the vehicle at the time of the crime. The government doesn't make that argument, and that's the only way the government could sweep in even the customary use prong of the Arkansas statute. But, Justice Kagan, you asked me to do that. But on notice, if you're convicted three times of burglary for burglarizing an RV, you're on notice, presumably, if you look at the Federal statutes and you then possess a firearm, that those burglaries were of a structure, as Taylor said. I don't understand the notice point. Well, Justice Kavanaugh, I think that, if I may, it begs the question a little bit whether the RV is, in fact, a structure. But you would look at Taylor and you'd see it citing the model. Taylor's the case. Mm-hmm. Right? Focus on Taylor. It's a long time ago. Talks about other structures. It doesn't limit it to the 84 definition. Cites the model penal code. Cites the Lefebvre treatise. Points out all the State statutes. And I think if you're convicted three separate times of breaking into an RV and look at those sources, you would be on some notice that you shouldn't be possessing a firearm under Federal law. Well, Justice Kavanaugh, there are many, many pieces of Taylor. So there is the State law piece that my friend is focused on. But Taylor also says on the very same page that Congress, in 1986, intended the practical identical definition of burglary as in the 84 Act. And remember, the 84 Act covered only buildings. But Taylor does not do that, though, when it says or other structures. Quite clearly, Taylor departs from the 84 statute in what it describes there. Don't you agree when it says or other structures? I think it departs from the 84, but that's why the Court — Because the 84 Act only says building. That's right. I think that's why the Court said practically identical, not identical. I'm sorry to interrupt. One of the reasons it departed, as I read the opinion, which is quite thorough, is it did a full excavation of the Model Penal Code, of the treatises, of the State statutes, and said the 84 definition does not reflect common understanding, as Judge Sutton described in detail in his opinion, of the common understanding at the time of what burglary entailed. Right. The Court did look to State law in Taylor, but as I said, it also looked to legislative intent and the drafting history and the like. And I think Taylor was correct insofar as it went at that time, that you still would have covered a majority of the States, even if Taylor covered vehicles adapted for overnight accommodation. The switch happened in Mathis. That's when the government came to the Court and said if you have aggressive divisibility jurisprudence, that's going to leave aside many State laws because of divisibility reasons. So the answer to the State law concern is in Mathis, and that's the bridge the Court has already crossed and that the government doesn't ask the Court to revisit. If we're talking about congressional intent, I think there's one other important thing to put on the table in the text of the law, and that's the residual clause. I know the Court obviously has invalidated that clause, but we think the text is relevant in terms of congressional intent. And the text of that clause, remember, reads as follows. After the enumerated crimes, it says any other crime that, quote, otherwise involves, I'm sorry, I'm reading at page 10A of the government's appendix, that otherwise involves conduct that presents a serious potential risk of physical injury. And so the word otherwise tells us that when Congress defined burglary, in fact, it didn't define, but when Congress used the word burglary, it must have assumed that the version of burglary it had in mind, quote, involved conduct that presents a serious potential risk of physical injury. Now, if you look at the NAFD amicus brief, and this is responsive also to Justice Breyer's questions about statistics, there actually have been quite a lot of studies conducted about burglary law. And what they find is that when there's a burglary of a home or somebody's residence, there is a real possibility that you could have a violent confrontation or physical injury, something in the range of 2 to 7 percent of the time. By contrast, when it's burglary of a non-residential structure, the percentage goes down to 0.17 percent, which translates to one out of every 700 crimes that involve what a State would expansively call burglary of a non-residential structure. Breyer. Which category does this case belong in? Fisher. So this case belongs in the latter, because we're talking about things that are not primary residences. Breyer. But they're not. I mean, they're residences. They're inhabited by people. And so I don't know why it would be a lower statistic if it's, say, a car or a trailer or some kind of motorized vehicle that a person uses as his home. Fisher. Well, I think, Justice Breyer, the typical usage of something like a sleeper van or recreational vehicle is not as a residence. A person has a home, and then they have a second vehicle that they use for trips and weekends and vacations and the like. And so if you ask somebody that has a house and a sleeper van, where's your residence, they would point to their house, not the sleeper van. And I think that's the way the statistics work. Breyer. What are you basing that assertion on? Fisher. I'm just basing it on a common-sense understanding of the word residence, Justice Kavanaugh. Breyer. The assertion about RVs? Fisher. The customary usage assertion? Breyer. Yes. Fisher. Well, we do cite a statistic in our brief from a trade association, Justice Kavanaugh, if you want to look at that. It's a pretty thorough study done out of the University of Michigan. And what they found is that the typical owner of a recreational vehicle uses it only 19 nights a year. That's 5 percent of the time. Kagan. Your position, Mr. Fisher, is that mobile homes are included, but RVs are excluded. Is that correct? Fisher. I think it's probably correct as to mobile homes. It's not at issue in front of the Court, but I think that would be correct. Kagan. Yes. But that's what I understood you to be saying in your brief. Does any State make that distinction in its law? Fisher. Well, Tennessee does, just to start with Tennessee. Subsection A of the Tennessee law on page 14a covers structures, which it includes in the definition of structure, a mobile home. Subsection B talks about vehicles, and vehicles is a subsection in front of the Court. So you don't have to look any further than the government's appendix in this case. And you find it in other State laws, too. Illinois, the Smith case, which the government itself cites and, in fact, asks its courts to follow, distinguishes between motor homes on the one hand and things that are less commonly used for overnight accommodation on the other. Kagan. Could you give your view of where, if we accepted your position, what that would mean in terms of how many States' laws qualified? Fisher. Yes. And I want to – I think I can give you a thorough typology, if you let me, which is we do agree with the government that only about 12 States would be within the definition if you were to hold both Tennessee and Arkansas law or fall outside of it. So the adapted clause would bring in – would bring in many States. But on the other hand, the government hasn't told you that on the back end, you have about 20 other States that are broad even under the government's – overbroad even under the government's definition. So what this case boils down to, Justice Kagan, is a delta between the parties of something about between 15 and 19 States. And even in those States, you have States like Tennessee. I'm sorry. You said that in a way that made me – I'm sorry. The delta, what you're fighting about – Yes. – is in the high teens. Yes. That's right. And even among that group of States, I don't dispute that that's somewhat significant. Even among those States, though, there are many States like Tennessee that would have a separate provision that it's divisible that would still qualify as burglary. So it's even, I think, less than the high teens. And I understand that the government keeps harping on the number of States because that is certainly the strongest version of their argument. But even if this were a case about first principles and not about stare decisis, where the Court had already said that vehicles are out, we think there's three countervailing forces that, as a matter of first principles, should leave the kind of vehicles we have at issue here out. First, we have the broader context of the law that I've described, which is the 1984 Act and the – and this Court's understanding that Congress didn't intend to significantly expand upon the definition there, as well as the residual clause and what that tells you about congressionality. First, we have the purpose of ACCA, which is laid out at great length in the Taylor opinion, where, again, the Court said in much the same words as the residual clause, what Congress was worried about were particular crimes where there's a risk of – inherent risk of physical injury, and not only the inherent risk, but an awareness on the fact of the perpetrator that that risk was present. And this speaks to some  of the conversation earlier. And then thirdly, we haven't yet talked about administrability. And I think the Court got its preview into the difficulty in terms of administrability when you asked Ms. Ross about what the word adapted means. Now, our definition – this is Kagan, this brings me back to the conversation we just had – is well grounded in Federal, State, and local law. There's a definition that runs throughout every level of law that separates stationary structures that can be moved, like a mobile home or a floating home on the one hand, and things that are essentially vehicles on the other. The adapted definition that the government gives you, they readily admit, is not easily defined. And I still, as I stand here, just to be candid, don't know whether a physical adaptation is required. Is a mattress in the back of a station wagon enough? Is, as the government suggests at page 18 of its brief, simply hanging a T-shirt in the window like a curtain to block a light enough? Different States are going to answer that question differently. And not only does the Stitt brief point out a couple of examples, but the NACDL brief points out examples at pages 13 to 15 of its brief. So adapted is going to be a very, very difficult line to draw, and I don't know how many cases the Court wants to have come back to it on that. But isn't that what the model penal code had and some States already have? In other words, this is not something that would be created now. Well, Justice Kavanaugh, it's true that many States have a statutory language that says adapted for overnight accommodation. But what I'm telling you is different States will interpret that differently, which is why Ms. Ross couldn't give you a straight definition. I understand. But that's always going to be the case that there will be some slight differences, right? That may be true, but I think when you don't have a firm grounding throughout other areas of law, like our rule does, you're more likely to have variation in problems. I think that's what I would tell you. And you don't think adapted has a firm grounding, even though it's been around in most State statutes for or in many State statutes? Well, I don't see a definition in the government's brief, and I haven't seen a definition anywhere else, so I'm certainly not aware of one. And I would ask you also, as you looked, as a matter of first principles, if you have any doubt as to how to resolve this case, we think this is a case that really cries out for the rule of lenity. Another important aspect of notice, of course, is for defendants to have fair understanding of what conduct would qualify for a given sentencing enhancement. And if nothing else, the fact that this Court has said on so many occasions that vehicles are out without any qualifications, without any reservations, and that structures and buildings are in, would have told the ordinary person that vehicles, even like sleeper vans, recreational vehicles, were outside of the definition of generic burglary. If I may, I'd like to spend a few minutes on the specific provision of Arkansas law that was also talked about at the beginning of the argument. As I understand the government's position, it's not disputing that an ordinary car would be outside the locational element of burglary. Now, the first thing the government said was they didn't think that was before the Court, but I just don't see how that could be the case, given that it's within this question presented. The question presented to the government itself drafted says adapted or used. And so used has to mean something different than adapted, and we think it quite obviously covers things like the Arkansas statute, which is an ordinary vehicle in which somebody lives. And the government's only answer to that statutory language is, well, every single time somebody lives in a car, it will, in fact, be adapted. Now, Justice Gorsuch already pointed out one problem with that, which is surplusage. If that were the case, you wouldn't need anything other than an adapted clause. Alito, but we're talking about a State statute that could well be interpreted in lots of different ways by the State courts. Do you want us to provide a definitive interpretation of the Arkansas statute here? I think if it were ambiguous, Justice Alito, that might be something you wouldn't want to do. But when the plain language so obviously covers an ordinary car, we don't think there's any reason to flinch from that. In Maluli the State statute is adapted. Well, this was raised pretty late in the day, this argument about the Arkansas statute and the living in. And given that and given our decision in Duanez, why don't we do exactly what Justice Alito is suggesting and just remand it and let the lower courts figure it out. Maybe they can certify it to the Arkansas Supreme Court and figure this out. So for two reasons, one procedural and one substantive, Justice Gorsuch. The procedural reason is it's squarely within the government's question presented. It's within the rule the government is asking the court to adopt. The government's header in the argument section to its rule says vehicles that are adapted or used for overnight accommodation. So I don't know how you would do it. I'll spot you all of that. Okay. I'm with you. But the Eighth Circuit didn't have a chance to consider this particular argument about living in. And it's a nifty little argument. But maybe we'd benefit from being a court of review rather than first view on it. Well, I'd encourage the Court to do exactly, this is my substantive answer, to do exactly what it did in Maluli when we had a controlled substances law in front of you, and the question was whether that State law from Kansas was overbrought into the categorical approach. The government argued in its brief that because there were no State court decisions to actually applying that State law in the broader way, that the Court shouldn't accept that under Duenas-Alvarez. Breyer. I mean, the obvious interpretation the other way is that what they mean by used is used regularly, or used more than once, or used in some other way. And we don't know, I mean, I can't believe that they'd mean used once, and the person left his briefcase or something in the car. They can't mean that. No, I agree it doesn't mean that, Justice Breyer. What we say it means is what Justice Sotomayor was describing earlier, which is somebody who uses the car as their home and sleeps in the car every night. And this is the empirical answer to the government's assertion, which is just it is empirically untrue that every time somebody sleeps in a car, they will adapt it for that overnight accommodation. In fact, quite to the contrary, many people would be embarrassed to be using their car as a home, or they would be concealing that fact because they would be looking to evade local zoning laws that would prohibit sleeping overnight in parking lots or the like. So we cite in our red brief, Justice Breyer, an article from the New York Times and a footnote of a whole collection of studies and articles that explain this phenomenon. And it is just not true as an empirical matter that a car in which somebody lives will be necessarily adapted for overnight use. Alito, if you were representing a defendant before the Arkansas Supreme Court, and the person had been convicted under this statute, the person lived in the car, but every morning cleaned up the car so there was no way anybody could tell that anybody had been living there, would you rule out the possibility of arguing to the Arkansas Supreme Court that there might — that maybe there should be some additional requirements read into this provision? Well, Justice Alito, if I were appointed to that case, I might make that argument, but I think I would have a pretty lousy argument. And the reason why is because the plain text of the law would be directly against my argument. Remember, there's already — there's a separate prong of Arkansas law that covers customary usage, and I think I heard Ms. Ross say that covers the kinds of vehicles that are designed for that purpose or physically adapted to that purpose. So the only thing the other clause can mean under standard tools of statutory construction is the other — is some other kind of car in which somebody lives. And so I think even if somebody were to make that argument to the Arkansas Supreme Court, we cite in our brief cases from the State of Arkansas that says we follow ordinary statutory construction principles, and it would just be a flat loser of an argument. And even if the plain text arguments weren't enough, we outline in our red brief in the Sims case the numerous other reasons why the plain language of a State statute ought to control for categorical approach purposes. And those are two general categories. First, the efficiency, predictability, and fairness that undergird the categorical approach. And secondly, the Sixth Amendment concerns that undergird the categorical approach, all of which coalesce to amount to if the State law is clear on its face that it's broader than the Federal counterpart, that — that the prior conviction under the State law simply can't be a qualifying offense. And so we think that's enough to decide the case on the Arkansas side. There were some questions earlier about how the Court should think about the categorical approach more generally, and so let me say a couple of words about that, because I do think it is a fair observation from the Court that part of what's dwindling down the number of States covered by the government's approach in our case is the nature of the categorical approach. Now, the Court had fair notice of that. The government told you this in Mathis, and it told you even in Taylor, that if you go down these roads, you're going to start to dwindle the number of States. And the Court, I think, had good reasons to do that, because when you turn to the categorical approach, it's not just about congressional intent. It's about these predictability, fairness, and Sixth Amendment constitutional concerns that have to be in play. So it's not purely a question of congressional intent. It's also a question of workability. But as workability and constitutional jurisprudence. But regardless of how different members of the Court think about those undergirding principles, there is, in fact, as Justice Kagan mentioned, there's a bill before Congress right now that would adopt a totally different approach. And this is something Attorney General Sessions spoke about in August. And so it is very much on the table in Congress right now to take a different approach. And I'd return the Court, if I may, to Taylor. In Taylor, there was actually a bill pending at the time of that decision. And the Court, for whatever reason, went ahead and issued its opinion in Taylor and has sort of owned this jurisprudence ever since. And one thing that you might think about here is there's a bill pending in Congress right now. We think the safer path is for the Court to continue down its prior precedent. They have good – you have good reasons for what you've done. I understand some of you are frustrated with it, and maybe Congress is frustrated with it. But the best thing the Court, I think, can do is follow its own jurisprudence in this case, which is – which means two things. One is apply the categorical approach as you've outlined it all the way up through Mathis. And even apply it as to burglary, as you've put structures and buildings on the one hand and vehicles on the other. And if Congress is dissatisfied with the outcome, it's obviously fully able to pass the law that's pending in the department, even if it hasn't taken a firm position, can take a position and get something done. But we think if the Court goes out of its way again to do something more extravagant in these cases, you're going to potentially own this jurisprudence a lot longer. And that's really what's happening here. The reason these cases are in front of you, you may know this already, but the reason these cases are in front of you are because after the invalidation of the residual clause, the government is going around and making a bunch of arguments that it didn't make before, trying to get in various prior State convictions that it wasn't arguing for under the enumerated clauses or under the use of force clauses. That's why you have this new explosion of ACCA cases. And so I think the better thing is for the Court to follow its own cases, its own precedent, leave it to Congress to adjust if it wants, but not feel like it has to solve everything or every single problem as it arises. Sotomayor, if we accept the government's adapted, and I understand all its problems, would the Tennessee statute survive? And if it's not, why not? Fisher, if you accept the government's definition of adapted, then the Tennessee statute would fall within it, but it would be also, there would be, so, yes, I think the answer to that is yes. If you accept the government's argument on adapted, then Tennessee is within it. But we ask, for all the reasons I've asked before, not to accept the government's argument to adapted. The only thing the government has to say for itself, Justice Sotomayor, and I may be repeating myself here, is the State-by-State count. We think the State count is answered by the flow of this Court's jurisprudence and the other things in Taylor, things like adhering to the 84 congressional intent, adhering to the most important thing, perhaps, which is just sweeping in violent offenders. Mr. Chief Justice, you talked about people using guns. You know, that would be the quintessential case. Of course, Congress drew it a little bit more broadly, a risk of physical injury. But for all the reasons I've argued and we've shown in our briefs, the outer limits of the Tennessee law, even on its own terms, covers these kinds of cases that, as I said to Justice Breyer earlier, are a 1 in 700 chance of physical injury. And in those kinds of cases, we don't think Congress would have expected a State law to be swept up into ACCA. And I would hasten to add that I think this is also responsive, Justice Breyer, you asked about how these cases are charged. When there are the kinds of altercations that Justice Alito, for example, was hypothesizing, somebody is inside and there is a violent altercation, those cases aren't charged as burglary. They're charged as things like carjacking, robbery, assault. So the burglary convictions, and this is what the Sentencing Commission found when it backed burglary out of even the crime of violence provisions in the Sentencing Guidelines, it found that when burglary is charged, it's in the cases where nothing happened but the entry. And so that may well still satisfy the categorical definition of burglary under ACCA, the residential entry, because of the awareness and because of the inherent risk. But once you go beyond primary residences and talk about things that are hardly ever occupied and that people are going to target specifically because they're hardly ever occupied, walking down to the marina with a sleepy sailboat on board on the dock and rummaging through the contents, those are the kinds of things that Congress, I don't think, would have expected to be swept up, and any sensible definition of ACCA wouldn't trigger the harsh consequences that follow. If there are no more questions, I'll submit the case. Thank you, counsel. Five minutes, Ms. Ross. Thank you, Mr. Chief Justice. I just want to make a few points. The first is that Justice Gorsuch suggested that perhaps my friend on the other side would quibble with our numbers with respect to how many States would have ACCA burglary and how many wouldn't under our view and under Respondent's view, and my friend has not actually quibbled with those numbers. He agrees that at most we're looking at 12 States with ACCA burglary under his view, and I think that that is itself, if not dispositive, very close to it, because, again, we don't think that's a statute that Congress would have passed. Now, my friend has a couple of reasons why Congress might have done that. He says, well, really, the Delta is only 20 or so cases or 20 or so States, but those 20 States make the difference between the definition of ACCA burglary satisfying what this Court said four times over in Taylor, that it was trying to get at the way that the States used the term burglary, the majority of States. It said that with respect to the 1984 statute, with respect to the 1986 statute, as a reason for rejecting the common law definition, and when it introduced the categorical approach and said that a few State statutes might be broader than the definition that it was adopting. So those 20 State statutes, I think, really cannot be underestimated here. The other reason that my friend gave for why the numbers are so low is that Mathis changed everything. But Mathis didn't change everything. As Mathis itself would explain, Mathis interpreted this, the ACCA, as it always stood, and so I don't think that Congress, when it enacted the statute in the first instance, would have expected about 12 State laws to come in as burglary. Another thing that my friend mentioned was the residual clause. Again, I don't think that when Congress enacted a statute with the word burglary and then with the residual clause, which we know was an attempt to expand the scope of the statute to reach other crimes, that it in fact would have meant for most burglary statutes or a substantial number of burglary statutes to come in through the residual clause while narrowing the point or the word burglary to essential obsolescence. So given the way that the State statutes play out here, we think that our reading is the one that is consistent with what Congress was trying to do and with Taylor itself. Now, speaking in terms of Taylor, my friend mentioned that Taylor said that the definition that it was taking on was practically identical to the 1984 definition and that that definition only included buildings. What I think – I apologize, I don't remember exactly who said it. Someone had mentioned, one of the Justices had mentioned that in fact the practical difference may make up for the fact, I believe it was Justice Kavanaugh, that really the difference between buildings and structures, and that might well be true. I also think that Taylor itself was looking at a definition of building and Congress in 1984 was looking at a definition of building that had taken on its own very broad meaning in burglary law. If you look at the appendix to our brief in this case, most if not all of the States that actually defined building did so in terms of vehicles, other structures, et cetera. So they had a very broad definition that might not make sense in ordinary English, but was what State burglary statutes used. And so when this Court comes along in Taylor and says building or structure, it's really just explicating that. Another way to look at this is through the Lefebvre treatise that we obviously rely on in the briefs, which similarly makes clear that those – that both building and structure were often broadly construed. Another point that I just wanted to clear up with respect to the government's position in Mathis, I don't think it is true that the government said that all of the statutes that it noted would in fact be out if Mathis came out the way it did. It said it would raise some questions, and many of those statutes, in fact, are broader than the statutes that we are talking about here today. In closing, we heard a lot about numbers this morning, both on our side and from my friend. I think the thing that we – there are two things really at the core of this case that can't be denied. One is that burglary has always protected the core of dwellings, and the second is that on Respondent's view, ACCA burglary takes a step back from that and includes far fewer dwellings, eliminates the majority of State statutes precisely because they cover exactly what courts for centuries have thought of as the core of burglary. We don't think that's what Congress intended. We don't think that's what this Court intended in Taylor. And we would therefore ask that the decisions below be reversed. Kagan. Kagan. Ms. Rost, do you agree that if a statute covers just regular cars, that that falls outside? Regular cars meaning no – nobody's living there? Nobody's living there. Nobody's doing nothing. You're just driving it. Yes, Your Honor. I think it would be difficult in light of this Court's cases, even though actually a large number of States covered those. I think it would be very difficult in light of Mathis and Duenes-Alvarez and all the other cases in which this Court said. So you're accepting that those are out? Yes, Your Honor. And how about the ones that say vehicles that are used for business activities, commercial activities? Are those in or out? So, Your Honor, we haven't taken a position on that in this Court. It's not raised in these cases. That is not sort of the considered view of the Justice Department at this point. We are not using those statutes at this point. If the Court has no further questions, we'd ask that you reverse in both cases. Thank you. Thank you, counsel. The case is submitted.